KELLNER LAW GROUP PC
Richard L. Kellner (Nevada State Bar No. 8139)
1180 South Beverly Drive, Suite 610
Los Angeles, CA 90035
Telephone: (310) 780-6759
Facsimile: (310) 277-0635

ACKERMANN & TILAJEF, P.C.
Craig Ackermann (California State Bar No. 229832)
Brandon Wheatley (California State Bar No. 309259)
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635
*Pro Hac Vice Motion Forthcoming*

INDIA LIN BODIEN, ATTORNEY AT LAW
India Lin Bodien (Washington State Bar No. 44898)
2522 North Proctor Street #387
Tacoma, Washington 98406
Telephone: (253) 212-7913
Facsimile: (253) 276-0081
*Pro Hac Vice Motion Forthcoming*

Attorneys for Nicole Griffin

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Nicole Griffin,<br><br>Plaintiff,<br><br>vs.<br><br>Silsam, Inc. dba Rebel Party Rentals.<br><br>Defendant. | Case No.<br><br>**PLAINTIFFS' COMPLAINT FOR:**<br><br>**(1) SEXUAL HARRASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 USC §2000e-16.**<br><br>**(2) SEXUAL HARRASSMENT IN VIOLATION OF NV REV STAT §613.330 (2017)**<br><br>**(3) RETALIATORY TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 USC §2000e-3(a)**<br><br>**(4) RETALIATORY TERMINATION IN VIOLATION OF NV REV STAT §613.340 (2013)**<br><br>**And DEMAND FOR JURY TRIAL** |

Plaintiff **Nicole Griffin** ("Plaintiff Griffin"), as and for her Original Complaint against Defendant **Silsam, Inc.** dba **Rebel Party Rentals** ("Defendant Rebel Party Rentals" or "Defendant"), respectfully alleges as follows:

## I.
## JURISDICTION

1. This Court has jurisdiction over Plaintiff Griffin's federal claims pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 2000 et seq., as amended by the Civil Rights Act of 1991 42 U.S.C. § 1981 ("Title VII") and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff Griffin's state law claims pursuant to NV Rev Stat § 613.330 (2017) and NV Rev Stat § 613.340 (2013) because they are so related to the federal claims that they form part of the same case or controversy between Plaintiff Griffin and Defendant.

## II.
## VENUE

2. Venue is proper under 28 U.S.C. § 1391, because all or a substantial part of the events giving rise to the claims here occurred in Las Vegas, Nevada.

## III.
## INTRODUCTION

3. In this case, Plaintiff Griffin seeks compensatory and punitive damages, back and front pay, attorney fees and costs against Defendant Rebel Party Rentals based, among other things, on Defendant Rebel Party Rentals' creation and toleration of a sexually hostile work environment and its retaliatory termination of her employment for complaining about workplace sexual harassment in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"), the Nevada Fair Employment Practice Act, Nevada Revised Statues, § 613 et seq.

## IV.
## THE PARTIES

4. Plaintiff Griffin is a resident of the State of Nevada. Plaintiff was employed as a driver by Defendant from August 16, 2019 to January 30, 2020.

5. Defendant Silsam, Inc. dba Rebel Party Rentals is a Nevada corporation that was, at all relevant times, engaged in the party rental business in Las Vegas, Nevada. Defendant's registered agent for service is Gerrrard Cox Larsen, 2450 St. Rose Parkway, Suite 200, Henderson Nevada 89074.

## V.
## STATEMENT OF FACTS

6. On August 16, 2019, Plaintiff Griffin began working for the Defendant as a driver at the Rebel Party Rental's facility at 6065 South Polaris Avenue, Suite H, Las Vegas, Nevada 89118.

7. During Plaintiff Griffin's employment, she experienced sexual harassment consisting of verbal comments, gestures and physical touching. Specifically, Plaintiff Griffin was subjected to a sexually hostile work environment by her boss, Jaime Galeana ("Jimmy"), who became Warehouse Manager on or round November 15, 2019, while working for Defendant Rebel Party Rentals.

8. On virtually a daily basis, Jimmy sexually harassed Plaintiff Griffin and other employees. For instance, Jimmy often addressed Plaintiff Griffin with, "hey baby" or "hey mama." These comments made Plaintiff Griffin feel uncomfortable.

9. Furthermore, Jimmy often approached Plaintiff Griffin and blew kisses

at her and also aggressively humped the air while around her (i.e., he thrust his hips back and forth toward her). When Jimmy intently stared at Plaintiff Griffin, he also made a V-shape with his fingers in front of his mouth and simulated oral sex on a woman. This behavior was unwelcome and distressing to Plaintiff Griffin.

10. Moreover, Jimmy often gave Plaintiff Griffin unwanted hugs and touched her shoulders multiple times a day. This touching was unwelcome and often made Plaintiff Griffin feel distraught and anxious.

11. Jimmy's inappropriate gestures, comments, and physical touching were disturbing and contributed to the sexually hostile work environment that transpired at Rebel Party Rentals.

12. Plaintiff Griffin repeatedly told Jimmy to stop his inappropriate comments, gestures, and touching. When Jimmy made unwanted comments and gestures to Plaintiff Griffin, and when he touched her, Plaintiff Griffin typically responded by saying, "that's GROSS," "ew – I cannot stand when you do that," "please GET AWAY from me," "STOP," or "GO AWAY."

13. In addition to verbally telling her harasser to stop his inappropriate behavior, Plaintiff Griffin also threw her hands in the air, shook her head and/or walked away from Jimmy when he sexually harassed her. Jimmy always laughed in response to Plaintiff Griffin's objections.

14. Despite making it clear to Jimmy that Plaintiff Griffin was very uncomfortable, and that his conduct was at all times unwanted and offensive to her, Jimmy continued harassing Plaintiff Griffin.

15. Jimmy frequently sexually harassed Plaintiff Griffin out in the open, including in front of Management, including General Manager Pedro Reyes ("Pedro"), Operations Manager Edgar Reyes ("Edgar"), and President Sam Emerson ("Sam").

16. In addition to being subjected to a sexually hostile work environment, Plaintiff Griffin also witnessed Jimmy sexually harass other employees openly and notoriously, in front of management, on virtually a daily basis, which further contributed to the sexually hostile work environment.

17. Plaintiff Griffin saw Jimmy "hump the air" toward other employees, touch their shoulders, lean on them, blow them kisses, and give them rather intimate hugs. When harassed by Jimmy, female employees typically told Jimmy to "knock it off," "STOP," or "GO AWAY."

18. Plaintiff Griffin's claims are corroborated by at least three of her coworkers: Howard Patrick, Joseph Hope and Kevin Williams.

19. Howard Patrick ("Howard"), who was employed as a Driver from around August 6, 2018 to December 6, 2019, observed Jimmy act in sexually inappropriate ways at work, out in the open, on virtually a daily basis. Howard frequently saw Jimmy "hump" employees at work and touch employees' buttocks. He also witnessed Jimmy make gestures of giving oral sex on pretend penises and saw him show sexually inappropriate videos on his personal phone to other employees on a daily basis. Howard witnessed Jimmy call employees (including Howard) over to him to look at his phone. When employees looked at his phone, he often had pornography playing.

20. Howard Patrick also witnessed Jimmy refer to Plaintiff Griffin as "mama." Jimmy would say "hey mama" to Nicole on a daily basis.

21. Joseph Hope ("Joseph"), who was employed as a Helper from around July 2019 to around March 2020, also witnessed Jimmy make inappropriate comments and gestures directed at many employees, including Nicole.

22. Kevin Williams ("Kevin"), who was also employed as a Helper from around October 2019 to sometime in 2020, also witnessed Jimmy engage in sexually

inappropriate behavior at work, out in the open, on a weekly basis.

23. Throughout Kevin's employment, he heard Jimmy often say, "hey mami" when speaking to Plaintiff Griffin. Each time Jimmy tried to flirt with Plaintiff Griffin, Kevin saw her walk away from Jimmy and advise him to go away.

24. As noted, on November 15, 2019, Jimmy was promoted to Warehouse Manager. Jimmy's promotion was memorialized in a notice from President Sam Emerson, given to all employees, informing them of Jimmy's promotion and new responsibilities. In the notice, it is specified that Jimmy's new responsibilities include overseeing anything pertaining to warehouse operations. The majority of employees of the Defendant, including the Plaintiff, then reported to Jimmy.

25. After his promotion to Warehouse Manager, Jimmy continued sexually harassing Plaintiff Griffin on virtually a daily basis up until the end of her employment on or around January 30, 2020. He continued to addressing Plaintiff Griffin with, "hey mama" and "hey baby." He continued to, "hump the air," blow kisses at Plaintiff Griffin, make a V-shape with his fingers in front of his mouth while staring at her, give her unwanted hugs, and touch her shoulders. Plaintiff Griffin continued to tell Jimmy that his conduct was unwanted and offensive by saying "STOP," "GO AWAY," and "GROSS," and by shaking her head and walking away. Jimmy continued to just laugh at Plaintiff Griffin.

26. In or around December 2019, Jimmy used his personal phone to show a group of employees (including Plaintiff Griffin) a real-life video of a dog eating a man's genitals. The moment Plaintiff Griffin realized what she was watching, she immediately walked away. Plaintiff Griffin was absolutely disgusted, appalled, and offended that her boss would have his employees watch such a vile video.

27. On January 3, 2020, Jimmy called employee Cecil Winters and Plaintiff Griffin over to the dock (where the trucks load and unload items). Jimmy, whose first

language is not English, motioned with his hands for Plaintiff Griffin to record him with her phone as he sat down on a chair while holding a banana. Although Plaintiff Griffin was confused as to why he needed her to record him eating a banana, she followed her boss' request. Jimmy put the banana in his mouth, but he didn't take a bite out of it. He began moving the banana in and out of his mouth, slowly, to simulate giving oral sex to a penis. Once Plaintiff Griffin realized what was happening, she stopped recording Jimmy and she walked away. Both Cecil and Plaintiff Griffin were absolutely disgusted and shocked that their boss would have them record him simulating oral sex. The recording of this video currently exists, and it is remains in Plaintiff Griffin's possession, kept as proof of Jimmy's offensive and outrageous workplace antics.

28. On January 20, 2020, Ms. Holly, Director of Human Resources/Payroll, provided Plaintiff Griffin with a copy of the Defendant's new (and first) employee handbook. Plaintiff Griffin read through the handbook, including Rebel Party Rental's new anti-sexual harassment policy. In line with the policy, and in learning about the Defendant's reporting process for the first time, Plaintiff Griffin complained to Ms. Holly about Jimmy's sexual harassment of her, and Plaintiff Griffin showed her the video of Jimmy simulating oral sex on a banana. Ms. Holly reported Plaintiff Griffin's sexual harassment complaint to Pedro, Edgar, and Sam.

29. After Plaintiff Griffin complained to Ms. Holly, she submitted an inquiry to the Las Vegas EEOC office and spoke with a few employees about the workplace sexual harassment she and others had experienced from Jimmy. Some of these employees were witnesses and victims of the sexual harassment.

30. On January 24, 2020, Pedro and Edgar had Plaintiff Griffin meet with them in the office. They told her that they were aware of her sexual harassment complaint against Jimmy. They advised Plaintiff Griffin that they wrote up Jimmy

for his conduct, although they showed Plaintiff Griffin no proof of this write-up.

31. After meeting with Pedro and Edgar, Plaintiff Griffin was immediately forced to work with Jimmy again – it did not appear to her that anything had been done. No investigation was conducted of all the relevant witnesses and victims, and her sexual harassment complaint was not taken seriously.

32. After the meeting, Pedro, Edgar, Sam, and the women who worked in the office began ignoring Plaintiff Griffin. They stopped saying hello to her and they looked the other way when she walked by. It was clear to Plaintiff Griffin that her co-workers were aware of her sexual harassment complaint and did not want her around the workplace. Plaintiff Griffin felt like her coworkers and management were intentionally alienating her.

33. On January 30, 2020, just a little over a week after complaining about Jimmy's sexual harassment of her, Plaintiff Griffin was demoted from a Driver to Helper. According to Plaintiff Griffin, it was unusual for a person to be demoted from a Driver to a Helper at Rebel Party Rentals.

34. On January 30, 2020 (just a little over a week after complaining about the sexual harassment), Pedro called Plaintiff Griffin into the office. Pedro told Plaintiff Griffin that she had been seen using her personal phone while at work earlier that day and that she was being disciplined with her very first write-up. Notably, Plaintiff Griffin had never before been disciplined by Defendant, and in fact had only been praised by Management for her stellar performance up until this point. Plaintiff Griffin knew that the proposed discipline was bogus, because had not been using her personal phone that day, since her cell phone bill was not paid at that time for her to be able to use her phone. Pedro then demanded that Plaintiff Griffin sign the write up. In response, Plaintiff Griffin told Pedro she would not sign the write up because it contained false information. Pedro then fired Plaintiff Griffin.

35. Plaintiff Griffin left the office to look for and talk to Sam, the President of Rebel Party Rentals. Plaintiff Griffin told Sam that Pedro, who was also present, had said that she was fired. Sam responded, "I know about your new lawsuit [(referring to Plaintiff Griffin's EEOC inquiry and sexual harassment complaint)] and it's all bullshit. It's absolutely bullshit - what you are doing. You are fired." Sam then told Plaintiff Griffin to leave.  This was direct evidence that Plaintiff was discharged in retaliation for protected sexual harassment complaints.

36. In addition to the Defendant firing Plaintiff Griffin in retaliation for making a sexual harassment complaint against Jimmy and/or for contacting the EEOC regarding the Defendant's sexually hostile work environment, Sam also reprimanded Plaintiff's coworker, Joseph Hope, for cooperating in the sexual harassment investigation and for submitting a statement to Plaintiff attorneys. Unexpectedly, in or around April 2020, Sam contacted Joseph Hope and told Joseph that he betrayed him. Sam was upset with Joseph for cooperating in the sexual harassment investigation and for signing a corroborating witness statement for Plaintiff.  It was unexpected for the President of the Defendant to directly contact Joseph to make him feel bad about telling the truth about, and to intimidate him and/or try to dissuade him from talking about, the daily sexually inappropriate conduct by one of the Defendant's Managers (referring to Jimmy).

37. Based upon the details provided above concerning the Defendant's sexually hostile work environment and Plaintiff's complaints, Plaintiff Griffin was terminated in retaliation for reporting workplace sexual harassment that she (and others) experienced by her boss, Warehouse Manager Jaime Galeana, and/or for reaching out to the EEOC regarding the Defendant's sexually hostile work environment created by Jimmy.

38. All administrative prerequisites to the filing of this proceeding have

been satisfied. On February 4, 2020, within 300 days of events described herein, Plaintiff Griffin jointly filed complaints with the with the Nevada Equal Rights Commission and the Equal Employment Opportunity Commission ("EEOC") against Defendant Rebel Party Rentals alleging, inter alia, that she was subjected to a sexually hostile environment while working at Rebel Party Rentals and her charge was amended to add retaliation. On or around October 9, 2020, the EEOC issued to her a right-to-sue letter. This lawsuit was timely filed within 90 days thereafter.

## VI.
## CAUSES OF ACTION

### AS AND FOR FIRST CAUSE OF ACTION

**Sexually Hostile Work Environment
in Violation of Title VII of the Civil Rights Act of 1964
(42 U.S.C. § 2000e et seq.)**

39. Plaintiff Griffin hereby incorporates by reference Paragraphs 1 through 38 above as if set forth herein.

40. As set forth in Paragraphs 1 through 38, Defendant Rebel Party Rentals subjected Plaintiff Griffin to a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended.

41. Defendant Rebel Party Rentals created and fostered a severe and persuasive sexually hostile work environment in which Plaintiff Griffin was forced to work which consisted of, among other things, (a) unwanted hugs and touching of Plaintiff Griffin's shoulders, (b) unwanted sexual comments made to Plaintiff Griffin, (c) unwanted sexual gestures toward Plaintiff Griffin, (d) unwanted exhibition of Plaintiff Griffin's superior (Jimmy) using a banana to simulate oral sex to a penis, (e) sexual harassment of other employees; and (f) Defendant's failure to

adequately prevent and correct sexually harassing behavior.

42. Under the doctrine of respondent superior, Defendant Rebel Party Rentals is liable for its employees' actions against Plaintiff Griffin because they were committed within the course and scope of Defendant Rebel Party Rentals' employees' employment.

43. As a direct and proximate result of Defendant Rebel Party Rentals violation of Title VII, Plaintiff Griffin has suffered emotional distress, anguish, and mental pain and suffering. Therefore, Plaintiff Griffin is entitled to recover compensatory damages for past and future non-pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment to life to the maximum extent and amount by law.

44. Defendant Rebel Party Rentals has intentionally engaged in the above described discriminatory practices with a reckless indifference to the federally protected rights of Plaintiff Griffin. Accordingly, Plaintiff Griffin is entitled to an award of punitive damages against Defendant Rebel Party Rentals. Plaintiff Griffin seeks relief as set forth below.

## AS AND FOR SECOND CAUSE OF ACTION

**Sexually Hostile Work Environment
in Violation of Nevada Fair Employment Practice Act
(NV REV STAT §613.330 et seq (2017))**

45. Plaintiff Griffin hereby incorporates by reference Paragraphs 1 through 38 above as if set full forth herein.

46. As set forth in paragraphs 1 through 38, Defendant Rebel Party Rentals subjected Plaintiff Griffin to a severe or pervasive sexually hostile work environment in violation of Nevada Fair Employment Practice Act.

47. Defendant Rebel Party Rentals created and fostered a sexually hostile work environment in which Plaintiff Olivarez was forced to work which consisted of, among other things, (a) unwanted hugs and touching of Plaintiff Griffin's shoulders, (b) unwanted sexual comments made to Plaintiff Griffin, (c) unwanted sexual gestures made toward Plaintiff Griffin, (d) unwanted exhibition of Plaintiff Griffin's boss, Jimmy, using a banana to simulate oral sex to a penis, (e) sexual harassment of other employees; (f) sexual harassment of other employees of Defendant that occurred within the presence of Plaintiff Griffin; and (g) Defendant's failure to adequately prevent and correct sexually harassing behavior.

48. Under the doctrine of respondent superior, Defendant Rebel Party Rentals is liable for its employees' actions against Plaintiff Griffin because they were committed within the course and scope of Defendant Rebel Party Rentals' employees' employment.

49. As a direct and proximate result of Defendant Rebel Party Rentals violation of Nevada Fair Employment Practice Act, Plaintiff Griffin has suffered emotional distress, anguish and mental suffering. Therefore, Plaintiff Griffin is entitled to recover compensatory damages for past and future non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment to life to the maximum extent and amount by law.

50. Defendant Rebel Party Rentals has intentionally engaged in the above-described discriminatory practices with a reckless indifference to the state protected rights of Plaintiff Griffin. Accordingly, Plaintiff Griffin is entitled to an award of punitive damages. Plaintiff Griffin seeks relief as set forth below.

//

//

## AS AND FOR THIRD CAUSE OF ACTION

### Retaliatory Termination
### in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. § 2000e-3(a) et seq)

51. Plaintiff Griffin hereby incorporates by reference Paragraphs 1 through 38 above as if set full forth herein.

52. Plaintiff Griffin brings claims against Defendant Rebel Party Rentals for Retaliatory Termination under Title VII of the Civil Rights Act of 1964.

53. As set forth in paragraphs 1 through 38, Defendant Rebel Party Rentals terminated Plaintiff in retaliation for her complaints about sexual harassment and/or for reaching out to the EEOC regarding the Defendant's sexually hostile work environment.

54. On January 30, 2020 (just a little over a week after complaining about the sexual harassment), Plaintiff Griffin was demoted from Driver position to a Helper position, Plaintiff Griffin was falsely accused and written up by Pedro for using her personal phone at work, and Plaintiff Griffin was then fired for the stated and pretextual reason of her not signing the write up that contained patently false information.  Plaintiff Griffin then went and asked Sam about her firing. In the conversation with Sam, he admitted to Plaintiff Griffin that he knew about her EEOC inquiry and sexual harassment complaint and expressed that what she was doing was "absolutely bullshit" and that she was indeed fired.

55. Under the doctrine of respondent superior, Defendant Rebel Party Rentals is liable for its Supervisors' unlawful employment practices against Plaintiff Griffin because they were committed within the course and scope of Defendant Rebel Party Rentals employees' employment.

56. As a direct and proximate result of the above-described termination in

retaliation for Plaintiff's sexual harassment complaints, Plaintiff Griffin has suffered mental anguish, emotional distress, and monetary loss. Therefore, Plaintiff Griffin is entitled to recover compensatory and punitive damages and front and back pay, and interest on back pay, for past and future non-pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment to life to the maximum extent and amount by law.

57. Defendant Rebel Party Rebels and its upper management deliberately engaged in the above described acts of retaliatory termination and/or had a reckless indifference to Plaintiff Griffin's common law rights. Accordingly, Plaintiff Griffin is entitled to an award of punitive damages against Defendant Rebel Party Rentals. Plaintiff Griffin seeks relief as described below.

## AS AND FOR FOURTH CAUSE OF ACTION

### Retaliatory Termination
### in Violation of Nevada Fair Employment Practice Act
### (NV REV STAT §613.340 et seq (2013))

58. Plaintiff Griffin hereby incorporates by reference Paragraphs 1 through 38 above as if set full forth herein.

59. Plaintiff Griffin brings claims against Defendant Rebel Party Rentals for Retaliatory Termination under the Nevada Fair Employment Practice Act.

60. As set forth in paragraphs 1 through 38, Defendant Rebel Party terminated Plaintiff in retaliation for her complaints about sexual harassment that she (and others) experienced by her boss, Warehouse Manager Jaime Galeana ("Jimmy") and/or for reaching out to the EEOC regarding the Defendant's sexually hostile work environment.

61. On January 30, 2020 (just a little over a week after complaining about

the sexual harassment), Plaintiff Griffin was demoted from Driver position to a Helper position, and Plaintiff Griffin was then falsely accused and written up by Pedro for using her personal phone at work. Plaintiff Griffin was fired for the pretextual and false stated reason that she did not sign the write up that contained false information. Plaintiff Griffin then went and asked Sam about her firing. In the conversation with Sam, he admitted to Plaintiff Griffin that he knew about her EEOC inquiry and sexual harassment complaint and expressed that what she was doing was "absolutely bullshit" and that she was indeed fired.

62.   As a direct and proximate result of the above-described termination in retaliation for Plaintiff's sexual harassment complaints, Plaintiff Griffin has suffered mental anguish, emotional distress, and monetary loss. Therefore, Plaintiff Griffin is entitled to recover compensatory and punitive damages and front and back pay, including interest on back-pay, for past and future non-pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment to life to the maximum extent and amount by law.

63.   Defendant Rebel Party Rebels and its' upper management deliberately engaged in the above described act of retaliatory termination and/or had a reckless indifference to Plaintiff Griffin's common law rights. Accordingly, Plaintiff Griffin is entitled to an award of punitive damages against Defendant Rebel Party Rentals. Plaintiff Griffin seeks relief as described below.

## VII.
## **DEMAND FOR JURY TRIAL**

64.   Plaintiff Griffin hereby demands trial by jury on all her claims.

//
//

## VIII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Griffin requests the following relief:

65. Defendant Rebel Party Rentals be found liable for (a) creating and fostering a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, (b) creating and fostering a sexually hostile work environment in violation of Nevada Fair Employment Practice Act, (c) terminating Plaintiff Griffin in retaliation for complaining about sexual harassment or contacting the EEOC in violation of Title VII of the Civil Rights Act of 1964, and (d) terminating Plaintiff Griffin in retaliation for complaining about sexual harassment or contacting the EEOC in violation of Nevada Fair Employment Practice Act.

66. Defendant Rebel Party Rentals compensate Plaintiff Griffin for all economic and other damages caused by its violations of Title VII and the Nevada Fair Employment Practice Act to the maximum extent and amount allowed for and provided by law, including lost back pay, front pay, and interest;

67. An award of $300,000 dollars in compensatory damages against Defendant Rebel Party Rentals and in favor of Plaintiff Griffin for Plaintiff Griffin's past and future non-pecuniary losses, emotional pain, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

68. An award against Defendant Rebel Party Rentals of no less than $300,00 in punitive damages for Defendant Rebel Party Rentals' malicious disregard of Plaintiff Griffin's (a) state and federally-protected right to work in an environment free from sexual harassment, and (b) right to be protected from discrimination for opposing unlawful employment practices;

69. An award of reasonable attorneys' fees for all work performed by counsel for Plaintiff Griffin on behalf of Plaintiff Griffin;

70. An award of all costs incurred by Plaintiff Griffin's counsel in litigating this matter; and

71. An award of such other and further relief, at law or in equity, as the Court may deem appropriate, to which Plaintiff Griffin may be justly entitled.

Respectfully submitted,

Dated: December 21, 2020     By:     /s/Richard L. Kellner

Richard L. Kellner, Esq.
Nevada State Bar No. 8139
Craig J. Ackermann, Esq.
CA Bar No. 229832

*Attorneys for Plaintiff Nicole Griffin*